UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Shukri I. I., | Case No. 21-CV-2533 (DSD/JFD) |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Shukri I. I. seeks judicial review of a final decision by the Commissioner of Social Security denying her application for supplemental security income ("SSI"). Plaintiff claims she is disabled by degenerative disc disease, lumbar radiculopathy, cervical spinal stenosis, cervical radiculopathy, degenerative joint disease, rotator cuff tears of both shoulders, chronic pain syndrome, depressive disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), and somatic symptom disorder. The case is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 18) and Defendant's Motion for Summary Judgment (Dkt. No. 20),[1] which have been

---

[1] On December 1, 2022, the District of Minnesota amended Local Rule 7.2, which governs procedures in social security cases, to conform to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). D. Minn. LR 7.2 advisory committee's note to 2022 amendment; (see also Text-Only Notice to Attorney, Dkt. No. 23). The Supplemental Rules apply to actions filed on or after December 1, 2022. Because this case was filed before that date, the procedures established by the previous version of Local Rule 7.2 apply, including a provision that the Court resolve the case on cross-motions for summary judgment. See D. Minn. LR 7.2(c) (2015).

1

referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

Plaintiff seeks reversal of the Commissioner's final decision and remand to the Social Security Administration ("SSA") on the basis that the Administrative Law Judge ("ALJ") did not properly consider medical opinion evidence from consultative examiners Myriam Roby, C.N.P., and Grace Totoe, M.D. The Commissioner asks the Court to affirm the final decision. For the reasons set forth below, the Court recommends that Plaintiff's summary judgment motion be denied, the Commissioner's summary judgment motion be granted, and the Commissioner's final decision be affirmed.

I.     **Background**

Plaintiff applied for SSI on June 20, 2019, with an alleged disability onset date of August 28, 2018. (*See* Soc. Sec. Admin. R. (hereinafter "R.") 10.)[2] Her allegedly disabling conditions were obesity, degenerative disc disease of the spine, "acromioclavicular joint," osteoarthritis, degenerative joint disease of the right shoulder, and PTSD. (R. 86–87.)

Plaintiff's applications were denied on initial review and reconsideration, and an ALJ held a hearing at Plaintiff's request on February 2, 2021. (R. 32.) Plaintiff testified at the hearing that she was impaired due to diabetes, swollen feet, and numbness and weakness in her legs. (R. 44.) She had trouble walking due to pain and could not use her hands due to swelling and pain. (R. 44–45.) Her range of motion was very limited, despite

---

[2] The Social Security administrative record is filed at Dkt. Nos. 15 through 15-14. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

recent shoulder surgery. (R. 45–46.) Plaintiff further testified that she had problems with concentration and memory, and she experienced anxiety and depression. (R. 46, 48.) The ALJ next posed a hypothetical question to vocational expert Jesse Ogren, asking him to

> assume a hypothetical individual of the same age, education and work experience as the claimant[,] who could perform light work as defined in [the] regulations[;] she could not climb ladders, ropes and scaffold[s;] she could occasionally climb ramps and stairs[;] she could occasionally stoop, kneel, crouch and crawl[;] she could occasionally reach overhead and for this hypothetical we're going to go ahead and just say bilaterally and frequently reach in all other directions. She could understand, remember, and carry out simple, routine instructions and tasks[,] and she could have occasional interaction with supervisors, coworkers and the general public.

(R. 51.) Mr. Ogren testified that the hypothetical person could work as a labeler, hand packager, or "inserter."[3] (R. 51–52.) If additional limitations of no overhead reaching on the right side, no work at unprotected heights, and no controlling moving dangerous machinery were included, the same jobs would still be available. (R. 52.)

The ALJ issued a written decision on February 22, 2021, determining that Plaintiff was not disabled. (R. 7–24.) Following the five-step sequential analysis outlined in 20 C.F.R. § 416.920(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since June 20, 2019 (the application date). (R. 12.) At the second step, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease (cervical and lumbar); bilateral rotator cuff tears and degenerative joint disease, status-post rotator cuff repair on right; obesity; post-traumatic stress disorder (PTSD);

---

[3] Under the Dictionary of Occupational Titles, "inserter" is a benchwork occupation in the paper goods industry and "inserts paper identification tabs into slots of guide devices attached to index filecards." *Dictionary of Occupational Titles* 794.687-058 (4th ed. rev. 1991).

3

depressive disorder; anxiety disorder; and somatic symptom disorder." (R. 12.) At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 13.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4]:

> to perform light work as defined in 20 [C.F.R. §] 416.967(b) except could not climb ladders, ropes, and scaffolds; could occasionally climb ramps and stairs; could occasionally stoop, kneel, crouch, and crawl; could occasionally reach overhead on the left, should not be required to do any overhead reaching with the right upper extremity, and could frequently reach in all other directions; could understand, remember, and carry out simple, routine instructions and tasks; could have occasional interaction with supervisors, coworkers, and the general public; and should not be required to balance on narrow, slippery, or erratically moving surfaces.

(R. 17.) With this RFC, the ALJ concluded, Plaintiff could not perform her past relevant work. (R. 22.) Thus, the ALJ proceeded to step five and determined that Plaintiff could work as a hand packager or inserter. (R. 23.) Consequently, she was not disabled. (R. 24.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

## II.   Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C.

---

[4] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

4

§ 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for SSI, the claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

SSI benefits are not payable before an application is filed, 20 C.F.R. § 416.335, and thus, the relevant time frame for Plaintiff's SSI claim is from June 20, 2019 (the date of

the SSI application) to February 22, 2021 (the date of the ALJ's decision). *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (using SSI application date to mark the beginning of the time period at issue); *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (using the date of the ALJ's decision on the SSI claim to mark the end of the relevant time period).

**III.   Discussion**

Plaintiff argues that the ALJ did not properly evaluate medical opinion evidence from Dr. Totoe and Ms. Roby, including articulating her reasons for rejecting their opinion. (Pl.'s Mem. Supp. Mot. Summ. J. at 11, Dkt. No. 19.) The medical opinion evidence at issue is a consultative examination report completed jointly by Dr. Totoe and Ms. Roby. (R. 495–502.)

Ms. Roby and Dr. Totoe examined Plaintiff on November 4, 2019, solely for the purpose of evaluating Plaintiff's SSI claim. (R. 495.) Plaintiff's self-reported symptoms and limitations, as reflected in the subjective part of the evaluation, included the following:

- "States can walk ½ block, then has increased back pain, then needs to sit and rest for 10 mins then can walk again."
- "Can stand for 10 mins then needs to sit due to the pain."
- "States that she cannot pull arms upwards which causes increased pain."

(R. 496.)

The accompanying objective medical findings included an x-ray of Plaintiff's right shoulder that showed no fracture or malalignment, no bony abnormalities, preserved joint spaces, and "unremarkable" soft tissues. (R. 501.) The overall impression was "unremarkable." (R. 501.) On physical examination, Plaintiff "look[ed] well" and was "not

in any distress." (R. 497.) Her neck was "supple," and her lungs, cardiovascular system, abdomen, and extremities were objectively normal. (R. 497.) Plaintiff's gait was stable, and her stance was normal, though she had diminished reflexes in her ankles and knees. (R. 497.) With Plaintiff's right upper extremity, she could lift a 10-pound weight up to 90 degrees before she reported 10/10 shoulder pain, and with her left upper extremity, she could lift a 10-pound weight up to 45 degrees before she reported 9/10 shoulder pain. (R. 497.) Her right-hand grip strength was 23.2 pounds, and her left-hand grip strength was 14.2 pounds. (R. 397.) A range-of-motion chart completed during the examination reflected varying limitations in range of motion of Plaintiff's shoulders, elbows, wrists, knees, hips, ankles, and spine (R. 499–500.) The range-of-motion chart recorded only range of motion and subjectively reported pain, however, not strength, exertion, or other functioning.

The work limitations ultimately recommended by Ms. Roby and Dr. Totoe in the report were:

- Able to ambulate ½ block, then has increased back pain, then needs to sit and rest for 10 mins then can walk again.
- Able to stand for 10 mins then needs to sit due to the pain.
- Able to sit for 10 minutes, before she needs to adjust[.]
- She can lift about 5–10 lbs. frequently in an 8-hour workday, with frequent rest breaks[.]
- Grasp strength is equal bilaterally moderate.
- Grip strength is equal bilaterally moderate.
- Fine motor manipulation-adequate.

(R. 498.)

The ALJ discussed Dr. Totoe and Ms. Roby's medical opinion in the written decision. (R. 21.) The ALJ first recounted Dr. Totoe and Ms. Roby's findings that Plaintiff

7

> could ambulate half a block before having increased back pain and needing to sit and rest for 10 minutes before walking again; stand for 10 minutes and then needing to sit due to pain; sit for 10 minutes before needing to adjust; and lift about 5-10 pounds frequently in an 8-hour workday, with frequent rest breaks. Dr. Totoe opined that the claimant had adequate fine motor manipulation but moderate grasp and grip strength bilaterally.

(R. 21.) The ALJ noted, however, that the opinion was based "almost verbatim" on Plaintiff's self-reports and found that the opinion was not well supported or consistent with physical examination findings, including Dr. Totoe and Ms. Roby's own examination. (R. 21.) Accordingly, the ALJ found Dr. Totoe and Ms. Roby's opinion "not persuasive." (R. 21.)

Under 20 C.F.R. § 416.920c, medical opinions are evaluated for their "persuasiveness" according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. The two most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). In determining supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). In determining consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). An ALJ must explain in the written decision how they considered

supportability and consistency but are not required to articulate how the other factors were considered. 20 C.F.R. § 416.920c(b)(2).

The ALJ articulated three reasons why Dr. Totoe and Ms. Roby's opinion was not persuasive: (1) it was not well-supported; (2) it was not consistent with physical examination findings; and (3) the limitations opined by Dr. Totoe and Ms. Roby were taken verbatim from Plaintiff's self-reports. The Court finds that these reasons are supported by substantial evidence of record, as set forth below.

Beginning with supportability, Dr. Totoe and Ms. Roby presented relatively little *objective* medical evidence and supporting explanations to support their opinion. The objective medical findings included a normal x-ray of Plaintiff's right shoulder, stable gait, and normal stance. There were scant objective findings of Plaintiff's strength, exertion, or functioning. Dr. Totoe and Ms. Roby found that Plaintiff was limited in lifting up a 10-pound weight with each upper extremity, but even those findings were based on Plaintiff's subjective reports of pain. (R. 497.) No objective findings support Dr. Totoe and Ms. Roby's limitations on walking, standing, or sitting; those limitations were either based entirely on Plaintiff's subjective reports or lacked objective support altogether. Dr. Totoe and Ms. Roby's objective range-of-motion and grip findings do support their limitations on lifting, grasping, and gripping, but those findings were also based, in part, on Plaintiff's subjective reports of pain, and, as discussed below, those findings are not consistent with evidence from other medical and nonmedical sources.

Turning to consistency, the ALJ discussed the following relevant evidence in the written decision. Progress notes and imaging in September 2019 reflected a possible small

tear in Plaintiff's left rotator cuff and a partial tear of Plaintiff's right rotator cuff. (R. 591–94.) A physical examination on December 3, 2019 was normal. (R. 518–19.) An MRI of Plaintiff's lumbar spine in March 2020 showed normal alignment, some mild disc degeneration, and some bulging. (R. 582.) An MRI of Plaintiff's cervical spine in June 2020 contained mostly normal (with some mild) findings, with one moderate finding for right neural foraminal stenosis with encroachment of the exiting right C5 nerve root. (R. 573–74.) A progress note from August 2020 documented significant pain improvement, negative impingement signs, and increased strength in Plaintiff's rotator cuff minutes after a cortisone injection was administered. (R. 646.) In October 2020, Plaintiff had right shoulder arthroscopic rotator cuff surgery. (R. 651.) At a follow-up appointment in November 2020, Plaintiff had no musculoskeletal complaints other than pain resulting from the surgery. (R. 648.) Physical examination findings were normal. (R. 650.)

This evidence, cited by the ALJ in the written decision, is not consistent with the limitations opined by Dr. Totoe and Ms. Roby, including the walking, standing, sitting, grasping, or gripping limitations. As to the lifting limitation, while there is evidence of a possible left rotator cuff tear and a partial right rotator cuff tear, a cortisone injection in August 2020 was effective, and Plaintiff had a successful surgery on her right rotator cuff in October 2020. The other records cited by the ALJ are not consistent with an inability to lift five to ten pounds frequently. Substantial evidence supports the ALJ's finding that Dr. Totoe and Ms. Roby's medical opinion was not consistent with evidence from other medical and nonmedical sources.

10

The Court has also considered other evidence—both evidence that supports and evidence that detracts from the ALJ's decision. That evidence includes a scheduled neck surgery for June 2019, which was postponed due to elevated liver enzymes (R. 384–85); a function report completed in August 2019, in which Plaintiff describes pain, functional limitations, daily activities, and abilities (R. 262–68); Plaintiff's hearing testimony (R. 44–49); an emergency room note from June 2019 (R. 487–89); and records from Dr. Kay Maust relating to the relevant time period (R. 386–88, 390–91, 513, 523–27). But the presence of other evidence that does not support the ALJ's decision does not undercut the evidence that does support the ALJ's decision. Therefore, this additional evidence does not change the Court's conclusion that substantial evidence supports the ALJ's determination that Dr. Totoe and Ms. Roby's opinion was inconsistent with evidence from other medical and nonmedical sources.

Finally, the ALJ correctly noted that Dr. Totoe and Ms. Roby recited verbatim Plaintiff's reported subjective limitations for walking and standing. Plaintiff told Dr. Totoe and Ms. Roby that she could "walk ½ block, then has increased back pain, then needs to sit and rest for 10 mins then can walk again." The limitation opined by Dr. Totoe and Ms. Roby was: "Able to ambulate ½ block, then has increased back pain, then needs to sit and rest for 10 mins then can walk again." That is verbatim what Plaintiff said. Plaintiff also told Dr. Totoe and Ms. Roby that she could "stand for 10 mins then needs to sit due to the pain." The limitation opined by Dr. Totoe and Ms. Roby was: "Able to stand for 10 mins then needs to sit due to the pain." Again, that is verbatim what Plaintiff said. An ALJ may reduce the persuasive value of an opinion that is based largely on a claimant's subjective

11

complaints. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (giving "less weight" to an opinion based mostly on subjective complaints). Furthermore, Dr. Totoe and Ms. Roby did not present objective medical evidence to support the walking or standing limitations, nor were the limitations consistent with evidence from other medical or nonmedical sources. The ALJ did not err in considering the verbatim recitation of subjective complaints in assessing the persuasiveness of Dr. Totoe and Ms. Roby's opinion.

## IV.   Conclusion

The ALJ did not err in considering Dr. Totoe and Ms. Roby's medical opinion. The ALJ's assessment was supported by substantial evidence, and the ALJ adequately articulated her consideration of the medical opinion. Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 18) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Dkt. No. 20) be **GRANTED**;

3. The decision of the Commissioner of Social Security be **AFFIRMED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.


Date: January 19, 2023                *s/ John F. Docherty*
                                      JOHN F. DOCHERTY
                                      United States Magistrate Judge


## NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written

objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).